CASE 39—ACTION BY HELEN C. SMITH AND OTHERS AGAINST L. & N. R. R. CO. FOR A MANDATORY INJUNCTION TO RESTORE A RAILROAD CROSSING.—JAN. 19.

# Louisville & Nashville Railroad Company v. Smith, &c.

APPEAL FROM BULLITT CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANT APPEALS. REVERSED.

RAILROADS—DESTRUCTION OF CROSSING—MANDATORY INJUNCTION—ESTOPPEL—ADEQUATE REMEDY AT LAW.

Held: 1. Plaintiffs, in a proceeding to compel a railroad by injunction to restore a crossing over its tracks, without alleging or proving irreparable injury, admitted that when the work of double tracking the railroad was in progress, which necessitated a cut eight or ten feet below the original crossing, they went to the superintendent in charge, interviewed him on the subject, and acquiesced in his proposition to secure the necessary right of way and build a road so that the pike could be reached without crossing the railroad at all. With this under-

standing, and at great expense, the railroad finished its double tracking, lowered its tracks, and destroyed the crossing. It appeared that to restore the crossing would be very expensive, and that, if restored, the danger from accidents, owing to the steepness of the grade, would be almost impossible to guard against. HELD, that plaintiffs were estopped to invoke mandatory injunction.

2. Injunction will not lie to compel a railroad company to restore a crossing over its track, where plaintiffs have an adequate remedy at law.

FAIRLEIGH, STRAUS & FAIRLEIGH, FOR APPELLANT.

What we here contend is:

1. That there is a well marked distinction between the case where a railroad company, without right or authority, takes the lands of another for its use, and the case where a railroad company in the improvement of its existing road over land which it owns and of which it is in possession, destroys an intangible, incorporeal right which another claims in the land of the railroad company.

2. That whilst in the former case, under the authority of the Holloway case ejectment to recover the land will lie; in the latter case mandatory injunction is not to be employed at the will of the complaining party.

The chancellor in such case will consider all the circumstances and conditions, and decree accrodingly. He will not decree that a railroad company shall restore a crossing so as to make a way across its tracks if in doing so it will be put to an unusual expense—an expense out of all proportion to the advantage to the complaining party to be gained by the restoration. He will not in any event decree the restoration of a crossing which will be dangerous to the lives of the persons using it, or to the lives of those on the trains. In all such cases the complaining party will be remitted to an action for damages.

3. The action was not seasonably brought, but the complaining parties slept on their alleged right for two years, and therefore, can not invoke the extraordinary remedy of mandatory injunction.

## AUTHORITIES CITED.

22 A. & E. Ency. of Law, 1190; Bowman v. Wickliffe, 15 B. M., 98; Conyers v. Scott, 14 Rep., 782; Hall v. McCleod, 2 Met., 98; Thornton, &c. v. L. & N. R. R. Co., 19 Rep., 96; Rail-

Louisville & N. R. R. Co. v. Smith, &c.

way Co. v. Telford's Exors., 89 Tenn., 293; Railroad v. French, 100 Tenn., 209; Connolley, &c. v. Branstler, 3 Bush, 702; Weller v. Monroe, 21 R., 1705; Halloway, &c. v. Louisville, &c. Ry. Co., 92 Ky., 246 Halloway, &c. v. Louisville Ry. Co. &c., 92 Ky., 244.

EDWARD W. HINES, FOR APPELLANT.

### POINTS AND CITATIONS.

1. As the Coleman land over which a passway is claimed has always been unenclosed woodland, and the roads or paths through the land have been changed at will, the presumption is that the use was permissive merely. Bowman v. Wickliffe, 15 B. M., 98; Conyers v. Scott, 94 Ky., 123.

2. As the land owner for whose use the crossing was constructed pursuant to the requirement of the charter consented that the crossing might be removed, one who had at most only an easement in the land can not complain.

3. The crossing being constructed for the benefit of the land owner, the railroad company had the right to presume that all persons who were using the crossing were his servants or members of his family, and therefore no presumption arises that there was any grant of an independent right to use the crossing. Hall v. McLeod, 2 Met., 98.

4. Appellees having stood by and permitted the crossing to be removed without protest are estopped to demand its restoration.

5. The remedy of appellees, if they have any, is an action for damages.

CHAPEZE & HALSTEAD, FOR APPELLEE.

### STATEMENT AND AUTHORITIES CITED.

This case was argued orally last week, and principles stated in the presence of the court and we do not deem it necessary to recapitulate them. The authorities cited in brief under appropriate headings are as follows: Talbot v. Thorne, 91 Ky., 417; O'Daniel v. O'Daniel, 88 Ky., 185; Hansford v. Berry, 95 Ky., 56; Conyers v. Scott, 94 Ky., 123; Elliott on Roads and Streets, 2d ed., sec. 154, p. 163; Potts v. Clark, 62 S. W. R., 884; Larkin v. Ryan, 25 Ky. Law Rep., 613; Burrier v. Rice, 25 Ky. Law Rep., 661; Kentucky Statutes, sec. 768; Elliott on Railroads, vol 3, secs. 1140, 1146; Thornton on Railroad Fences and Private Crossings, sec. 271.

OPINION OF THE COURT BY JUDGE BARKER—REVERSING.

This action was instituted by the appellees for a manda-
tory injunction requiring the appellant to restore a rail-
road crossing over its tracks and right of way near gap in
Knob Station in Bullitt county, Ky., which it had destroyed
in changing the grade of its road at that point.    In their
petition the appellees allege, in substance, that they own
property, in Bullitt county, within a mile or two of the
crossing in question; that theretofore, and for many years
in excess of the statutory period, they had used and occupied,
under a claim of right, a passway from their lands across in-
terevning lands to the railroad crossing in question,
and over said crossing to the Louisville & Shepherdsville
Turnpike Road; that this exercise by them of the
easement in question had been continuous and ad-
verse to all the world for more than fifteen years
next before the injury complained of.    Appellant, by its
answer, controverted appellees' title to the passway, and
pleaded in estoppel an agreement on its part with appellees
whereby it acquired land, and made for them an outlet to
the turnpike in question at a point some 1,400 feet further
south than the original crossing over its right of way, which
afforded an entrance into the pike without crossing over
its line; that, appellees stood by and saw it change the grade
of its tracks at great expense, and acquire, by purchase,
the right of way. and the building of a road which secured
to appellees an outlet to the turnpike with the crossing the
railroad track.

Without setting forth the allegations of the pleadings in
detail, we think they sufficiently present, first, the title of ap-
pellees to the easement claimed by them, and, second, the
question of estoppel of appellees by their conduct with ref-

erence to the change of grade and the destruction of the crossing in question. The evidence shows that the passway in question, from the lands now owned by the appellees across all intervening lands to the turnpike at or near the crossing in question, have been exercised by them, their tenants and grantors, and the public generally, under a claim of right, continuously for forty or fifty years. This, in our opinion, sufficiently established their title by prescription to the easement.

About two years before the institution of this action, appellant found it necessary, in order to transport along its line from Louisville to the South the enormous traffic committed to its care, to double track its line from Louisville to Shepherdsville, and, to overcome a steep grade existing in its line at and in the neighborhood of the crossing in question, to make a cut and lower its tracks some eight or ten feet below the level of the original crossing, thus effectually destroying it. When this work was in progress, W. A. Foreman, one of the appellees, visited appellant's superintendent, Daniel Breck, who was in charge of the work, and interviewed him on the subject of the destruction of the passway; and while the superintendent did not, in terms, recognize appellees' legal right to the crossing in question, he said to Foreman that he would secure the necessary right of way, and make a road from the passway where the old crossing on appellees' side existed along the line of appellant's track, so that the new road would strike the Louisville & Shepherdsville Turnpike at a point 1,400 feet north of the old crossing, and thus obviate the crossing of appellant's line at all. It is admitted by both Foreman and his cousin, Helen Clay Smith, that they acquiesced in this proposition, whether or not they affirmatively agreed to it; or,

to use Miss Smith's own language, "if he made a good road she would not be stubborn about it." With this understanding, at great expense appellant finished the work by which it changed the grade of its line. lowered its tracks, and destroyed the crossing. It also obtained the right of way, and made a road along the route indicated in the conversation between Breck and Foreman, thus affording appellees an exit into the turnpike without crossing its tracks.

Appellees were not satisfied with the new road as made, claiming that, by reason of the steepness of its grade, it is impassable. The evidence on this point is contradictory; the weight, perhaps, being in favor of appellant. The evidence conclusively shows that it would be impossible to restore the crossing, except at an enormous expense in labor and money to appellant, and that even then it would be an exceedingly dangerous one, because of the fact that, in order to make it at all, it would be necessary to make a deep cut so as to get down to the grade of the track; and as appellant's road, even when lowered as it is at present, is on a steep grade, it would be almost impossible, according to the testimony, to overcome or guard against the danger of accident. We think the appellees are estopped from invoking the extraordinary remedy of a mandatory injunction against appellant, requiring it to restore the crossing, under these circumstances, and that they should have been remitted to an action at law for damages for whatever wrong or injury they may have suffered.

In the case of Byron v. Louisville & Nashville Railroad Company (22 R., 1007) 59 S. W., 519, a somewhat similar question in principle arose, and this court said: "The proof shows that appellant stood by and saw that the appellee was building the wall to hold the filling, and thus expended

large sums, without complaint or proceeding to stop the work, and when the work was nearing completion he seeks an injunction. If he had a right to an injunction he should have asserted it earlier, and before appellee had expended so much on the work. To grant an injunction when applied for would have necessarily damaged appellee greater than to refuse would damage appellant. There is no claim for damage made, and hence no question of recovery of damages before us." For the reason given, among others, the judgment refusing the injunction was affirmed.

And in the case of Herr, etc., v. Central Kentucky Lunatic Asylum (110 Ky., 282, 22 R., 1722), 61 S. W., 284, which was an action instituted by property holders to enjoin the asylum from polluting the waters of Goose creek by emptying its sewerage into it, it was said: "The question first to be determined under this state of facts is, whether appellant has an adequate remedy at law for the injuries complained of by an action for damages, as the rule is settled that an injunction will not be granted where the remedy at law is full, adequate, and complete. It was held in Hauns v. Asylum (103 Ky., 562, 20 R., 246) 45 S. W., 890, that an individual could maintain a common-law action against appellee for injuries identical in character with those herein complained of, and that an execution sued out upon a judgment in such a proceeding could be levied upon the property of appellee, unless the sale of such property would render the corporation wholly unable to care for the insane under its charge. And, even if it be conceded that appellee had no property which came under this head that would be liable to such an execution, we think it must be conclusively presumed that the Legislature would make suitable provision for the payment of such a judgment, as it is in reality a claim against the State, when it has been properly ascertained

and determined in the courts of the State. But even if it be conceded that appellant's claim for an injunction could not be defeated on this ground alone, "it is a rule practically without exception, that a court of equity will not grant relief by injunction, where the party seeking it, being cognizant of his rights, does not take those steps to assert them which are open to him, but lies by and suffers his adversary to incur expenses which would render the granting of the injunction a great injury to him. This rule is especially applicable where the granting of the injunction will operate injuriously to the public as well as to the party against whom the injunction is sought." 16 Am. & Eng. Ency. of Law, p. 356, and authorities there cited. Pomeroy, in his work on Equity Jurisprudence, sections 816, 817, announces the general doctrine as follows: 'Acquiescence is an important factor in determining equitable rights and remedies, in obedience to the maxim, "He who seeks equity must do equity, and he who comes into equity must come with clean hands." . . .' Acquiescence in the wrongful conduct of another by which one's rights are invaded may operate often upon the principles of and in analogy to estoppel, to preclude the injured party from obtaining many distinctively equitable remedies to which he would otherwise be entitled. This form of quasi estoppel does not cut off the party's title, nor his remedy at law; it simply bars his equitable relief, and leaves him to his legal action alone. Mr. High, in his work on Injunctions, section 786, says: 'He who seeks relief against a nuisance must show due diligence in the assertion of his rights, and where complainant has allowed the defendant for a long period to continue in the erection of his obnoxious structure, at great expense, equity will not interfere. . . . Complainants who have long slept on their rights will not be allowed to enjoin the nuisance,

and thus put themselves in a position from which their own laches has debarred them.' This principle was applied in Southard v. Morris, 1 N. J. Eq., 518; Logansport v. Uhl, 99 Ind., 531 (49 Am. Rep., 109); Attorney General v. N. Y. & L. B. R. Co., 24 N. J. Eq., 49; Traphagen v. Jersey City, 29 N. J. Eq., 650; Swaine v. Great Northern Ry. Co., 9 Jur., 1196. It has also been frequently applied by this court. Murphy v. Stanford Water, Light & Ice Co. (20 R., 2000), 50 S. W., 835. An injunction ought not to be granted where the benefit secured by the party applying therefor is comparatively small, whilst it will operate oppressively and to the great annoyance and injury of the other party and to the public, unless the wrong complained of was so wanton and unprovoked as to properly deprive the wrongdoer of all consideration for its injurious consequences. Jones v. City of Newark, 11 N. J. Eq., 452."

The case of Murphy v. Standford Water, Light & Ice Co., (20 R., 2000) 50 S. W., 835, was instituted to obtain an injunction to prevent the diversion of water from its natural channel, to the injury of the plaintiffs. The facts established the wrong complained of. This court affirmed the judgment refusing a perpetual injunction, and said: "If the appellants' damage is clearly shown to be caused by the appellee, still we think there is an ample legal remedy, and this great public benefit should not be crippled or hindered unless it be absolutely necessary to protect appellants' rights."

High in his work on injunctions, section 643, says. "As in all cases of the exercise of the strong arm of equity by injunction, the right to the relief may be lost by one's own negligence and delay in seeking protection. And where the owner of land over which a railway has been constructed has stood quietly by and neglected to insist upon compensation at the time his land was taken, and has waited until the road was

Louisville & N. R. R. Co. v. Smith, &c.

in full operation before asserting his rights, he will not be permitted to restrain its operation. In such cases an injunction, if granted at all should only be allowed as a last resort, and after all ordinary means of relief have proved ineffective." Section 640: "Where the owner of lands has conveyed to a railway company a right of way through his premises, upon a verbal assurance that the company would construct the necessary cattle gaps for the passage of cattle, a failure on the part of the company to comply with such an agreement will not warrant an injunction to prevent the operation of its road until the agreement is complied with, since the indirect effect of such relief would be to compel the company to construct the cattle gaps, and the power to thus enforce a specific construction is one which is rarely exercised by a court of equity."

In the case at bar, appellant is engaged in carrying on a great railway system. In its successful operation the general public is deeply interested. It is neither alleged nor proved that appellees have suffered irreparable injury by reason of the wrong complained of. They stood by and saw the enormous outlay of money, time and labor on the part of appellant in order to improve its track and facilitate the necessities of commerce and travel. They have an adequate remedy at law for whatever damage they may sustain by reason of the injury complained of, and, under all the circumstances of this case, under the principles announced in the authorities *supra,* we think that they should have been confined to compensation for the injury, which may be presented upon the return of the case.

For the reasons indicated, the judgment is reversed, for proceedings consistent with this opinion.

Petition for re-hearing by appellee overruled.