CASE 37.—ACTION BY MATTIE' T. HYDE AGAINST THE SOMERSET WATER, LIGHT & TRACTION CO., TO ABATE A SEWER AS A NUISANCE.—June 20.

## Somerset W., L. & T. Co. v. Hyde

Appeal from Pulaski Circuit Court.

M. L. JARVIS, Circuit Judge.

Judgment for plaintiff, defendant appeals — Reversed.

1. Injunction—Grounds of Relief—Discretion of Court.—The granting or refusing of an injunction depends on the facts of each particular case, and rests in the sound discretion of the court.
2. Same—Restraining Discharge of Sewage.—Where a sewer had been constructed many years before with the consent of the then owner of the property on which the sewage was discharged, and was afterwards extended on the request of one of the then joint owners of the property, and several years elapsed without any action looking to the abatement of the nuisance, and the discontinuance of the sewer would work a great hardship on a large portion of the public in the city and prove a great menace to health, and the injury to the property was of a permanent nature, and the owner could recover in one action for all damages, past and future, and would not be required to bring a number of suits, such

owner was not entitled to an injunction to restrain the discharge of sewage on the property.

O. H. WADDLE & SON for appellant.

SHARP & COOPER for appellee.  .

(No briefs—record out of office.)

OPINION OF THE COURT BY WM. ROGERS CLAY, Commissioner—Reversing.

This is an action on the part of appellee Mattie T. Hyde, wherein she seeks a mandatory injunction requiring appellant to abate a nuisance caused by the discharge of sewage on appellee's premises through pipes constructed and maintained by appellant.  The injunction was granted by the trial court; and, from that judgment, the Somerset Water, Light & Traction Company prosecutes this appeal.

The facts, briefly, are as follows: A number of years ago certain citizens of Somerset formed a company for the purpose of constructing a sewer for the drainage of the principal business portion of the city. The sewerage system so constructed finally became the property of the Somerset Water, Light & Traction Company, and this company is now operating the same.  The system drains the principal hotel of Somerset, the courthouse, jail, Somerset Sanitarium, other public buildings, and a few of the principal business houses of the central portion of the city.  At the time it was constructed an arrangement was made between the Somerset Water Company and the city, whereby the water company was authorized and agreed to construct a system of sewerage that would accommodate the central portion of the city.  The agreement pro-

vided that the sewer should be constructed exclu-
sively by and at the cost of the Somerset Water Com-
pany, and that those of the inhabitants of the town
who desired to connect therewith should pay the water
company such proportionate amount as would be rea-
sonable and fair considering the cost of the sewer and
the use to be made thereof.   The district in which
the public buildings were located and to be accom-
modated by the sewer, and, in fact, a large portion
of the city, is so situated that the natural drainage
flows into a large depression of the earth's surface
or deep hollow, from one side of which flows a large
spring known as the "Town Spring." This spring
creates a branch which flows southward until it con-
nects with Sinking creek.   The latter creek flows
through the town and on for several miles until it
empties into Pittman creek.   Pittman creek flows into
the Cumberland river.   At the time it was proposed
to construct the sewer J. M. McBeath was the owner
of a parcel of ground lying in the hollow above re-
ferred to, a short distance below the town spring, and
through which the town spring branch flowed.   The
water company, conceiving that McBeath might raise
some objections to, or claim some damage on account
of, the discharge of this sewage into the branch just
above his property, advised him of what it proposed
to do, and he thereupon consented to the construction
of the sewer and the deposit of the sewage in the
branch above his property.   The situation thus re-
mained for several years, during which time McBeath
sold his parcel of land to J. E. Tomlinson and T. V.
Ferrell; Tomlinson being the father of appellee, Mrs.
Hyde, and holding the title to one-half of the lot as
her trustee.   Thereafter Tomlinson and Ferrell
erected a number of small houses on the property in

question for the purpose of renting them to negroes. After the erection of these houses, Ferrell, who was one of the joint owners and who knew of the location and use of the sewer before the purchase was made, applied to the water company to extend the sewer under the street in front of their property and under one of the houses built over the branch, so as to discharge the sewage into the branch below the building. This was accordingly done, and conditions so remained until the Somerset Water, Light & Traction Company purchased the property of the Somerset Water Company in 1905. At this time Ferrell sold and conveyed his half interest in the property to Mrs. Hyde; the deed being made to Tomlinson as her trustee. At the time Mrs. Hyde purchased the property she knew of the location and use of the sewer. Soon after her purchase she demanded of appellant that it should either pay to her $1,000 in damages on account of the construction and maintenance of the sewer as connected with her property or it should discontinue the use of the sewer altogether. Appellant declining to accede to her proposition, she instituted this action.

The evidence shows that the natural flow of sewage is towards the point where appellee's property is located. It would be practically impossible to construct a sewerage system that would drain in any other direction. While it is true that by far the greater portion of the inhabitants of Somerset use cesspools constructed on their premises, and that the sewerage system in question covers only a small portion of the thickly populated part of the business district of the city, it appears from the evidence of several reputable physicians that the discontinuance of the sewerage system would work great hardship,

annoyance, and inconvenience upon those occupying the hospital, public buildings, and principal business houses, as well as constitute a menace to the public health. A cesspool may be constructed upon the premises of a residence, but in the case of a public or other building, occupied by a large number of persons, such cesspool would fill up very rapidly and become injurious to the health of the occupants. While Mrs. Hyde claims that she did not know of the location and use of the sewer at the time she and T. V. Ferrell originally purchased the property, it is nevertheless true that Ferrell, who jointly owned the property with her, did know of such location and use. Furthermore, she admits that after owning the property for a period of three years she did learn of the fact that the sewer was located and deposited sewage upon her property. At the time of the institution of the suit she and Ferrell had owned the property for about seven years. Thus it will be seen that during a period of about four years she failed to apply to the courts for any relief. The evidence further shows that the construction of a sewer pipe through appellee's premises and the deposit of the sewage thereon is offensive in the extreme and constitutes a nuisance.

It cannot be doubted that in many instances where municipal corporations discharge, or assist the discharge of, sewage directly on to private land from the outlet of a permanent sewer without having acquired the right so to do, the owner is entitled to restrain the injury committed by the judgment of a court of equity, and is not confined to a recovery of his damage in actions of trespass. Beach v. City of Elmira (N. Y.) 22 Hun, 158; Chapman v. City of Rochester, 110 N. Y. 273, 18 N. E. 88, 1 L. R. A. 296, 6 Am. St. Rep. 366; Stoddard v. Village of Saratoga

Springs, 127 N. Y. 261, 27 N. E. 1030; Story's Equity
Jurisprudence, section 928. In all such cases, how-
ever, the injury must be irreparable and such as can-
not be compensated for in damages. Palestine Build-
ing Association v. Minor, etc., 86 S. W. 695, 27 Ky.
Law Rep. 781. After all, the granting or refusing of
an injunction depends upon the facts of each particu-
lar case, and rests in the sound discretion of the court.
City of Logansport v. Uhl, 99 Ind. 531, 49 Am. Rep.
109. Where the interests of the public are to be taken
into consideration by the court, and when the issuance
of an injunction will cause serious public inconven-
ience or loss without a correspondingly great advan-
tage to the complainant, no injunction will be granted.
If the injunction would have the effect of greatly
injuring or inconveniencing the public, it may be re-
fused, even though as against the defendant the com-
plainant would be entitled to its issuance. The doctrine
has been applied where the issuance of the injunction
asked would result in cutting off the public water
supply, or the supply of electricity for lights and
power, or where it would deprive the public of a
necessary highway, or prevent the necessary dis-
charge of sewage, or interfere with the public system
of taxation. 22 Cyc. 784. In the case of Louisville
& Nashville Railroad Co. v. Smith, etc., 117 Ky. 364,
78 S. W. 160, 27 Ky. Law Rep., 257, this court said:
"An injunction ought not to be granted where the
benefit secured by the party applying therefor is com-
paratively small ,whilst it will operate oppressively
and to the great annoyance and injury of the other
party and to the public unless the wrong complained
of was so wanton and unprovoked as to properly de-
prive the wrongdoer of all consideration for its in-
jurious consequences"—citing with approval the case

of Murphy v. Stanford Water, Light & Ice Co., 50 S. W. 835, 20 Ky. Law Rep. 2001, which was an action to obtain an injunction to prevent the diversion of water from its natural channel, to the injury of plaintiff, and wherein it was said: "If the appellant's damage is clearly shown to be caused by the appellee, still we think there is an ample legal remedy, and this great public benefit should not be crippled or hindered, unless it be absolutely necessary to protect appellant's rights." In the recent case of Devau v. Pence, etc., 106 S. W. 874, 32 Ky. Law Rep. 697, this court said: "The trial court was warranted in refusing to grant the injunction. Besides, the injury or damage which will result to appellant can be easily ascertained, as the property is real estate. The value of this real estate before the construction of this sewer and its value since the construction of it can be as easily ascertained as can be any other damage to real estate. Nor is this such an injury as would require a multiplicity of suits. This sewer, by its construction, will necessarily empty all of the water which passes through it upon appellant's property, and the damage to her property is therefore of a permanent nature, and is easily ascertained. As the injury to appellant's property is not an irreparable one, but one for which the damages can be ascertained, and appellees are solvent, she was not entitled to the relief sought." Furthermore, this court has held that an injury to property, such as the facts of this case show that appellee's property has sustained, is of a permanent nature, and the party whose property is so injured may, in one action, sue and recover for all damages, past and present. City of Madisonville v. Hardman, 92 S. W. 930, 29 Ky. Law Rep. 253.

In view of the particular facts of this case, wherein

it is made to appear that the sewer in question was constructed many years ago with the consent of the then owner of the property; that it was afterwards extended upon the request of one of the joint owners of the property; that several years elapsed without any action looking to the abatement of the nuisance being taken; that the discontinuance of the sewer would work a great hardship upon a large portion of the public in the city of Somerset, and would prove a great menace to the health of its inhabitants; that the injury to appellee's property is of a permanent character, and she may in one action recover for all damages, past and present, and will not be required to go to the trouble of bringing a number of suits—we are of opinion that appellee was not entitled to an injunction. Upon the return of the case the court will impanel a jury, and submit to it the question of the extent of the damages to appellee's property.

For the reasons given, the judgment is reversed and cause remanded for proceedings consistent with this opinion.