## Husbands v. Paducah & Illinois Railroad Company.

CARTWRIGHT V. PADUCAH & ILLINOIS RAILROAD COMPANY.

HOUSER V. PADUCAH & ILLINOIS RAILROAD COMPANY, ET AL.

POWELL V. PADUCAH & ILLINOIS RAILROAD COMPANY, ET AL.

FOWLER V. PADUCAH & ILLINOIS RAILROAD COMPANY, ET AL.

YANCEY V. PADUCAH & ILLINOIS RAILROAD COMPANY, ET AL.

(Decided June 12, 1917.)

## Appeals from McCracken Circuit Court.

1. Railroads—Construction—Injunction.—The construction of a railroad will not be enjoined to prevent an interference with the rights of lot owners, in a platted subdivision outside a city, to the use of streets and alleys shown upon the recorded plat and set apart for such use in the deeds and title bonds under which the lot owners hold title to their lots and in the deed to the railroad company for its right of way.

2. Railroads—Contracts as to Streets and Alleys—Purchasers—Rescission.—But where the railroad company or its agents or trustees also hold every beneficial interest of the seller in and under the executory contracts of the purchasers of such lots a rescission and restoration will be granted to the purchasers when the railroad company has violated the provisions of such contracts with reference to the streets and alleys.

3. Appeal and Error—Damages—Rescission.—A purchaser under such an executory contract who, after a denial of his application for a rescission and an award of damages, accepts payment from the railroad company of the damages awarded can no longer insist upon a rescission; but he may, under section 757 of the Civil Code, prosecute an appeal from so much of the judgment as fixed the amount of the damages sustained.

4. Appeal and Error—Error in Instructions.—Cured by Judgment.—The error in an instruction authorizing damages to be awarded to the lot owner in whatever amount the jury believed from the evidence he had sustained or a verdict for the railroad company, if no damages were sustained, was cured by the judgment of the court awarding him nominal damages, to which he was entitled in any event, where the jury found for the defendant.

W. M. HUSBANDS and J. H. HUSBANDS for appellant, Josephine Husbands.

MILLER & MORSE for appellants, Aldora Cartwright, et al.

WM. MARBLE for appellants, Houser and Powell

D. G. PARK for appellants, Yancey and Fowler.

BRADSHAW & NICHOLS and W. M. HUSBANDS for appellee, West End Improvement Company.

WHEELER & HUGHES for appellees, Paducah & Illinois Railroad Co. and J. M. Rieke, et al.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming as to Husbands, Cartwright, Fowler and Yancey; reversing as to Houser and Powell.

These six cases grew out of the same state of facts, and are heard together by agreement, although the questions involved are not the same in all the cases. The cases of Henry Houser and O. B. Powell against the appellees present identically the same questions and were heard together in the court below, and the same is true of the two cases of J. W. Fowler and J. T. Yancey against the appellees. All of the appellants owned lots in the Colonial Heights sub-division of Paducah. This sub-division, however, is not within the corporate limits of the city, but is some three or four blocks beyond those limits. What is now Colonial Heights was first sub-divided and laid off into lots, streets and alleys about twenty-five years ago, by the West End Improvement Company, which caused a plat of said sub-division to be recorded in the office of the clerk of the McCracken county court, and by which the streets and alleys therein laid off were then dedicated to the use of lot owners. All of the lots now owned by appellants and involved herein were parts of that sub-division, except the lot of Mrs. Josephine Husbands, a part only of which was in the sub-division, and it is conceded that appellants bought their respective lots in the sub-division with reference to and that they are described in the deeds as laid out in the plat of the sub-division, and they have acquired such an interest in the streets and lots as are incident to their ownership of lots in the sub-division. In June, 1910, the West End Improvement Company, by contract in writing, sold to Messrs. Zachary and Raymond, all of that part of the addition which had not theretofore been sold and, pursuant to that contract, on February 27, 1913, by deed, conveyed to Zachary and Raymond all of that ground except such parts as the company or Zachary and Raymond had already sold to purchasers. After the purchase by Zachary and Raymond, they took possession of the property, renaming it Colonial Heights, and caused a new map to be made, which was substantially the same as the one made by the West End Improvement Company, and showing the same streets and alleys. They graded and graveled all the streets running through the sub-division, installed a sewerage system, laid water mains and connected them with the mains of the Paducah Water Supply Company and constructed sidewalks along several of the

streets. In the deed from the West End Improvement Company, to Zachary and Raymond, is the following clause:

"And whereas, prior to said contract of sale by said Company, to said Zachary and Raymond, said Company had platted and laid off said lands into lots, streets and alleys, as shown on the map of the West End Improvement Company, and as also shown in substantially the same way, by the map of 'Colonial Heights,' made and recorded by said Zachary and Raymond in Plat Book 'A,' page 137, in McCracken county clerk's office; and whereas many lots so laid off have been sold by said Zachary and Raymond, and for which, at the instance of said Zachary and Raymond, deeds and title bonds have been executed by said Company as hereinbefore set forth, calling for and recognizing the existence of the streets and alleys as shown on said maps or plats—therefore, said Company, as to such streets and alleys, hereby conveys such interest or rights, as it has and may lawfully convey, to be held by them, for such uses and purposes only as under the circumstances the laws of the land would require or impose, and in no manner to interfere or conflict with, or restrain, impair, or prejudice in any way, the rights of any of the purchasers of any of said lands or lots held under deeds or title bonds executed by said Company above referred to, nor with lawful rights of any other person therein."

Appellants, Husbands and Cartwright, have deeds for their properties, but appellants, Houser, Powell, Fowler and Yancey, hold their properties under title bonds and had not received deeds therefor. The deeds and title bonds or written agreements under which appellants and appellees held their respective portions of said subdivision, provided "that no use shall be made of said lots sold, or any part thereof, that will constitute a nuisance or injure the sale of any neighboring lot," and that purchasers of the lots shall have "the free use of the streets and alleys at all times."

On March 1, 1913, Zachary and Raymond, by deed, conveyed so much of the sub-division as had not theretofore been sold, together with the notes and their beneficial interests in the title bonds of appellants, to I. C. Utterback, L. M. Rieke and D. H. Hughes, who are alleged and proven to have bought the property as agents and trustees for the benefit of appellee, railroad company. Thereafter, Utterback, Rieke and Hughes conveyed to

appellee, railroad company, certain lots in the sub-division which it desired to use in the construction of its railroad line from Paducah, Kentucky, to Metropolis, Illinois, through the sub-division. In the summer or fall of 1914, appellee began the construction of its railroad between the points named and as it approached Colonial Heights sub-division these suits were filed by appellants against it; appellant, Josephine Husbands, seeking to enjoin the construction of the railroad; Aldora Cartwright, to recover damages from the railroad company resulting to her property from the construction of the railroad through the sub-division and across and along its streets and alleys. Henry Houser, O. B. Powell, J. W. Fowler, and J. T. Yancey, in their suits against the railroad company, the West End Improvement Company, Zachary and Raymond and Utterback, Rieke and Hughes, sought a rescission of their title bonds for the property purchased by them from the West End Improvement Company and failing in that, asked an injunction against the railroad company 'to prevent it from constructing its line, and failing to procure an injunction against its construction, asked damages for the injury done by the construction to their property, by obstruction of the streets and alleys in the sub-division. The judgment of the lower court, in the Husbands case, denied the prayer for an injunction but permitted her to amend her petition so as to recover damages for whatever injury she had sustained by the construction of the railroad. The Cartwright case was tried by a jury, upon the question of damages, which returned a verdict in favor of the defendant, but that verdict was set aside by the court and a judgment rendered in favor of plaintiff for nominal damages and costs. In the suits of Houser, Powell, Fowler and Yancey, the prayers for a rescission and injunction were denied and damages awarded: to Houser, eight hundred and seventy ($870.00) dollars; to Powell, two hundred ($200.00) dollars; to Fowler, one hundred and sixty ($160.00) dollars; and to Yancey, one hundred and sixty ($160.00) dollars, from which judgments these appeals are prosecuted.

We shall consider the appeals in the following order:

First, Josephine Husbands; second, Aldora Cartwright; third, Henry Houser and O. B. Powell; and fourth, J. W. Fowler and J. T. Yancey.

1. Josephine Husbands filed her petition before the work of construction was actually begun, by the railroad company, within the sub-division, and she asked both a

temporary and permanent injunction against the threatened construction of the railroad. Her motion for a temporary injunction was not acted upon by the chancellor and of this she complains bitterly, as well as of the judgment rendered upon final submission denying the permanent injunction. Her lot does not adjoin the railroad company's right-of-way or any of its construction, but is about half a square distant and the rights of abutting property owners are not involved. Her ground for injunctive relief is that the threatened construction by the railroad company, of an embankment twenty or twenty-two feet high, with a base of from seventy-five to one hundred feet wide, across the streets in the subdivision, will be constantly "a public and private nuisance to her property and a public nuisance to persons desiring to use said streets and to the public generally."

It will not be necessary for us to consider her objection to the failure of the court to grant the temporary injunction because of our conclusion that it was not error to refuse the permanent injunction, and that her only relief for the construction of the railroad across the alleys and streets of the sub-division was for damages, her contract having been completely executed before the railroad company or its agents acquired any interest in the sub-division.

The railroad crosses Harrison, Madison, Monroe, Jefferson and Broadway streets, on an embankment or fill, but the railroad company has constructed underpasses at Broadway, Jefferson and midway between Madison and Harrison streets, so that in getting to and from her lot in an eastern and western direction, where appellant, before the construction, could have traveled along any one of five streets, she is now restricted to three under-passes, and in going to and from her lot in a northern and southern direction, where she formerly could travel along 31st street, she must make a slight detour between Jefferson and Broadway streets; but with these exceptions there is no restriction of the means of ingress and egress open to her before the construction of the railroad. It will, therefore, be seen that she has not been deprived of the means of ingress and egress and that that right has been but slightly restricted or interfered with. That whatever injury may have resulted to her lot therefrom may be estimated in damages is, it seems to us, too clear to require argument, and that being true, it is, of course, apparent, that she was not

entitled to either a temporary or permanent injunction to prevent the construction or force a removal of a permanent public improvement such as a railroad.

The streets had been dedicated to the public use, so far as it was possible for the owners of private property to dedicate same to a public use, but that dedication had never been approved or accepted by any public authority, so far as this record shows. But, regardless of that fact, we know of no right in the individual to prevent, absolutely, the construction of a railroad, a *quasi* public institution with power of eminent domain because of the fact that, incidental thereto, private injury may result. If appellant, by injunction, could either stop the building of this railroad after its construction was decided upon, or could cause it to be removed after it has been constructed, because of the fact that her right to the use of avenues of approach to her lot has been, in a measure, interfered with, it would be impossible ever to construct a railroad through an inhabited territory, because if appellant could prevent its construction or cause its removal when her private rights were interfered with, any change in the location of the railroad would serve but to transfer a corresponding right to some other property owner. That there could, however, be a burden placed upon the land acquired by the railroad company for its right-of-way, by contract of a previous owner, that would prevent its use for such purposes and that this condition existed with reference to the plot of ground involved here is what appellant contends, but in our judgment such is not the effect of the conveyances with respect to this land, under which appellee holds title to its right-of-way, even if we should assume that such a burden could be fastened upon the land. By the provisions of those deeds it is conceded that so far as the railroad company is concerned the right of property owners within the sub-division to the use of the streets and alleys indicated on the plat, is established, and to the same extent that the public has a right in and to a public thoroughfare dedicated and accepted for the use of the public. But appellants have no greater right in these streets and alleys, under the deeds to them and to the railroad company for their respective parts of the sub-division, than they and the public would have in the use of public thoroughfares. By section 768, sub-section 5, Kentucky Statutes, it is provided: "Every (railroad) company shall possess the following powers and be subject to the following liabilities and restrictions:

"To construct its roads upon or across any watercourse, private or plank road, highway, street, lane or alley and across any railroad or canal; but the corporation shall restore the watercourse, private or plank road, highway, street, lane, alley, railroad or canal to its former condition as near as may be   . . ."

See also Wickliffe v. Ills. Central Railroad Co., 32 Ky. L. R. 159.

It is apparent, from the foregoing, that the railroad company had the right to cross on an embankment, the streets and alleys in this sub-division, but that in so doing it assumed the obligation to restore the streets and alleys to their former condition, as nearly as possible and subject, of course, to liability for private injury.   Whether or not the underpasses and new streets constructed by the railroad company restored the streets and alleys to their former condition as nearly as could be done, is not the question involved here, but the right asserted is that the company had no authority to cross the streets and alleys at all and that so doing constituted a private and public nuisance, although permissible under  our  law. This position is, manifestly, unsound and the cases cited and relied upon by appellant, Sullivan v. Jones, 208 Pa. 540, 66 L. R. A. 712; Ives v. Edison, 57 L. R. A. 134; Stock v. Jefferson, 114 Mich. 357; Clay v. Trimble, 165 Ky. 698, are, obviously, not in point because the parties enjoined in those actions were private individuals or concerns enjoying no such right to cross or interfere with public thoroughfares or private property as does a railroad company.

We are quite clear that appellant, upon the facts here, was not entitled to injunctive relief, but must look to her remedy at law in an action for damages.   See High on Injunctions, secs. 594, 762, 785 and 828; City of Chicago v. Union Building Assn., 102 Ills. 379; McGee's appeal, 114 Pa. State Reports 470; Haller v. Atchinson, Topeka & Santa Fe Railway Co., 28 Kansas 625; L. & N. Railroad Co. v. Smith, et al., 117 Ky. 369.

2. Aldora Cartwright and Margaret Cartwright, in their suit, sought only to recover damages for the injury done, and upon submission to a jury a verdict was returned in favor of the defendant, but this verdict was set aside by the court and a judgment was rendered awarding them nominal damages, with costs.

These appellants now complain that the verdict of the jury was flagrantly against the evidence and that the court misinstructed the jury.

Upon the question of whether or not the appellants had been damaged, they introduced seven witnesses who testified that they had been injured by the fill across the streets and the amount of the injury was fixed by these witnesses at various sums up to one thousand ($1,000.00) dollars. Appellee introduced six witnesses who testified that the appellants had not been damaged by the construction of the fill. After hearing this evidence the jury were sent to view the premises and thereafter returned a verdict as above indicated. It will be seen that the witnesses who testified were about evenly divided upon the question of whether or not appellants had sustained any damages and we would not feel warranted, under such circumstances if that were all of the evidence considered by the jury, to disturb the verdict and, much less, could we disturb it when the jury, after hearing this conflicting evidence, went upon the premises and viewed, for themselves, the whole situation.

The objection to the instructions given by the court is that the instructions should have directed the jury, peremptorily, to find for the plaintiffs and to leave to their discretion only to fix the amount of the damages sustained. Conceding this to be true, as we think it is, were appellants prejudiced by the court's failure to peremptorily instruct the jury to find for them the amount of damages sustained, in view of the fact that after the jury had determined that they had sustained no damage the court rendered a judgment in their behalf for nominal damages? In the instruction given, the court told the jury that the railroad company had obstructed the street upon which appellants' lot faced, which was the particular obstruction of which they complained, and told the jury to find for the plaintiff whatever, if any, damages they had sustained thereby, but if they believed they had not sustained any damage, to find for the railroad company. There is no other objection made to the instruction except that it authorized, in any event, a verdict for the defendant. And, conceding that this was error, it seems clear to us that the error was cured by the judgment rendered by the court, because the jury having found, from the evidence and an inspection of the premises, that appellants had sustained no damage, if the instruction had been given as desired by them the jury could have awarded them no more than nominal damages which the court has done.

3. Appellants, Houser and Powell, allege that they purchased their lots in Colonial Heights from the West

End Improvement Company, through its agents, Zachary and Raymond, in 1912, by written contract by which said company agreed to convey to appellants their respective lots and that said company still holds "a dry legal title to certain lots therein, including the plaintiffs' said lots" and is still bound for the fulfillment of all the stipulations in the contract of sale. They prayed, alternately, for a rescission of their contracts with the West End Improvement Company, for an injunction against the railroad company, requiring it to remove its railroad from the subdivision and for damages for any injuries sustained.

Having already discussed herein the question of injunction, under similar circumstances, in the Husbands case, it will not be necessary to again consider that question.

Since the petitioners allege that their lots were purchased by written contract, from the West End Improvement Co., through its agents, Zachary and Raymond, which company is alleged to still hold the legal title to these lots, and to be liable for the performance of its obligations under the contracts, it is apparent that the question of cancellation cannot be affected by the subsequent transfers to Utterback and Rieke and Hughes, and to the railroad company, unless the West End Improvement Company, or its agents, Zachary and Raymond, who held the legal title to the streets and alleys for the use of the appellants and appellees and other purchasers of lots in the sub-division, in their conveyance to Utterback, Rieke and Hughes made such conveyance of the streets and alleys and appellants' notes and contracts of purchase as would make them liable to appellants for the subsequent acts of Utterback, Rieke and Hughes and their grantee, the railroad company, because the acts complained of upon which the right to a cancellation of the contract is based are alleged to have been done by the railroad company and not by the West End Improvement Company or its agents, Zachary and Raymond. It is stated in brief for appellants, that "the defendants, appellees, Utterback, Rieke and Hughes, purchased by deed from Zachary and Raymond the same lots which the West End Company had, three days before, conveyed to Zachary and Raymond, as last above stated, and covenanted in the deed that said streets and alleys should be used for street and alley purposes only, and in no manner to interfere or conflict with or restrain, impair or prejudice in any way the right of any purchaser (including the

plaintiffs) in said streets and alleys, and they took said lots and whatever interest the West End Improvement Company and said Zachary and Raymond had in said streets and alleys subject to the aforesaid restrictions, and subject to the easements and rights of these plaintiffs, and all purchasers of lots, and the public in said streets and alleys." A reference to the deed referred to confirms the truth of this statement, as will be seen from the clause copied therefrom at length in the first part of this opinion. It is, therefore, apparent that the West End Improvement Company did not convey any of appellants' rights in or to the streets and alleys and did not give to the railroad company or those under whom it holds title, any warrant or authority for in any way interfering with appellants' full enjoyment of the streets and alleys and that company is, therefore, not in any way liable for the acts of the railroad company complained of herein with reference to the streets and alleys and appellants must, of course, look to the railroad company alone for redress, for its acts. Obviously, therefore, appellants were not entitled to a cancellation of their contracts as against the West End Improvement Company and Zachary and Raymond, if they still owned the contracts, because of what has been done by the railroad company without authority therefor from the West End Improvement Company, and which that company was powerless, as are appellants, to prevent. But appellants are not seeking a rescission against the West End Improvement Co., alone, which is alleged and proven to have sold not only the unsold lots through Zachary and Raymond to Utterback, Rieke and Hughes, but to have also conveyed every beneficial interest in the title bonds and appellants' notes thereunder, and that now Utterback, Rieke and Hughes, who are proven to be but trustees or agents of the railroad company, own and hold appellants' notes and all interest in the title bonds and that the West End Improvement Co. no longer has any beneficial interest therein. So, in reality, the railroad company owns the notes and all beneficial interest in the title bonds, executed by and to appellants.

The right of the company to cross the streets and alleys as complained of is sustained upon its right as a *quasi* public institution to override private rights, but the railroad company cannot interfere with a private right guaranteed under the same deeds through which it holds title and at the same time insist that the indi-

viduals whose rights it has thus overriden shall carry out their contracts with it, changed as they are by the company's acts. Its every right in and to appellants' notes and title bonds is purely private, and having transgressed, even though as a right, in its public capacity, appellants' rights in and to the streets and alleys as dedicated by its predecessors in title, it cannot thereafter exact of appellants compliance with their contract obligations which it has not respected, but must so far as these notes and title bonds are concerned do equity, and equity demands a rescission and restoration. Equity will not grant an injunction to remove the railroad, because of the public good served, larger than individual rights, but no such reason exists to prevent rescission. No more than a private individual can the railroad company refuse to comply with a contract under which it has become bound and at the same time demand the right for itself or its agents and trustees to exact of the other party compliance with his obligations under the same executory contract. Appellants, Houser and Powell, not having waived their rights to a rescission, it was manifestly error to refuse to grant them that relief.

4. Appellants, J. W. Fowler and J. T. Yancey, held title bonds for their lots in this sub-division, in the same way as appellants, Houser and Powell, and their suits were also for rescission, injunction and damages. The prayers for rescission and injunction were denied and they were awarded damages in the sum of one hundred and sixty ($160.00) dollars each by the judgment of the lower court. After those judgments were rendered, appellants accepted from the railroad company payment of the amounts adjudged to each. They now seek a reversal upon appeal, not only of that part of the judgment awarding them damages, but of the refusal of the court to rescind their contracts and to grant injunctions. Upon a showing that the judgments have been satisfied, appellee, railroad company, has filed, in this court, a motion for a dismissal of the appeal, but this motion will not be sustained because it is provided by section 757 of the Civil Code, as amended in 1888, that "when a party recovers for only a part of the demand or property he sues for, the enforcement of such judgment shall not prevent him from prosecuting an appeal therefrom as to so much of the demand or property sued for that he did not recover." In construing this section of the code, this court has frequently held that accepting satisfaction

of a judgment, where a party only recovers part of what he sued for, does not prevent him from appealing. Combs v. Bates, 147 Ky. 849; Hendrickson v. New Hughes Jellico Coal Company, 172 Ky. 568. As appellant, Yancey, sued for six hundred ($600.00) dollars and appellant, Fowler, for twelve hundred ($1,200.00) dollars damages and each recovered but one hundred and sixty ($160.00) dollars, it is apparent that Fowler, at least, had a right to appeal and Yancey to move for an appeal from so much of the judgment as awarded them damages, but having accepted payment in satisfaction for a part, at least, of their claims for damages, was not that such an election as will preclude them from thereafter asserting right to rescission or injunction? We think, unquestionably, that such a result must follow their acceptance of part payment of their claims for damages. Any other conclusion would be entirely illogical and could be sustained by no process of reasoning. Having elected to take damages under their contract, they cannot deny its validity, neither can they, having accepted damages in compensation for the injury done their lots, by the construction of the railroad, any longer ask to have the railroad removed. We, therefore, need consider upon the appeals of these appellants, only the question of the court's findings as to the extent of their injuries. Upon this question several witnesses testified for appellants stating that in their judgment the lots had been depreciated in value, by the construction of the railroad, from fifty to seventy-five per cent. of their value, while about the same number of witnesses testified for the defendant that their lots were not damaged at all, or only slightly. The findings of the chancellor are entitled to some weight and from all the evidence we are not authorized to disturb his judgment.

For the reasons indicated the judgments are affirmed, upon the appeals of Husbands, Cartwright, Fowler and Yancey, and reversed upon the appeals of Houser and Powell for further proceedings consistent herewith.