## Farr v. West End Improvement Company, et al.

(Decided November 12, 1918.)

### Appeal from McCracken Circuit Court.

Vendor and Purchaser—Bond for Title—Violation of Covenant—Rescission.—Where an improvement company laid off a subdivision into lots, streets and alleys, and sold the lots to purchasers, including the defendant, by title bonds providing that the streets and alleys were to be for the free and unrestricted use of the lot owners, and then sold the remainder of the lots and notes executed by the purchasers to two other parties who sold and conveyed them to plaintiffs, who made the purchase with knowledge of the conditions and restrictions under which the lots were sold, and who actively aided, assisted and represented a railroad company in acquiring a right of way through the subdivision, which railroad company subsequently constructed its road so as to violate the covenants and restrictions contained in the title bonds, plaintiffs so far contributed to the violation of the covenant under which defendant purchased as to make them responsible for its breach, thus depriving them of the right to enforce the contract and giving to the defendant adequate cause for its rescission, notwithstanding the fact that the railroad company, after acquiring its right of way, subsequently condemned the same right of way under the advice of one of the plaintiffs

who acted as its counsel, since the condemnation proceedings served no other purpose than to acquire under the form of law a right which the company had already acquired by purchase.

BAGBY & MARTIN and WM. MARBLE for appellant.

WHEELER & HUGHES for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COM-MISSIONER—Reversing.

This suit was brought by the West End Improvement Company, suing for the benefit of L. M. Rieke, J. C. Utterback and D. H. Hughes, against John L. Farr, to recover the balance due on the purchase price of a lot which had been sold to the defendant by executory contract. The defendant asked a rescission of the contract and the recovery of the amounts which he had paid on the contract. On final hearing, the counter-relief asked by the defendant was denied and plaintiffs were given judgment in accordance with the prayer of their petition. The defendant appeals.

The facts out of which the litigation grows are fully set forth in the case of Husbands v. Paducah & Illinois R. R. Co., 176 Ky. 290, 195 S. W. 831. Briefly stated they are as follows: The lot purchased by the defendant is located in the "Colonial Heights" sub-division of Paducah, which sub-division is located just beyond the corporate limits of that city. The tract of land constituting this sub-division was first divided and laid off into lots, streets and alleys, about twenty-five years ago, by the West End Improvement Company, which caused a plat of said sub-division to be duly recorded in the office of the clerk of the McCracken county court. In June, 1910, the West End Improvement Company sold to Messrs. Zachary & Raymond all that part of the addition not theretofore sold, and in the month of February, 1913, executed a deed to the purchasers carrying out that contract. Zachary & Raymond then took possession of the property, renaming it "Colonial Heights," and caused a new map to be made, which was substantially the same as the one made by the West End Improvement Company. They graded and graveled all the streets running through the sub-division, installed a sewerage system, laid water mains and connected them with the mains of the Paducah Water Supply Com-

pany. They also constructed sidewalks along several of the streets. On March 1, 1913, Zachary & Raymond conveyed so much of the sub-division as had not theretofore been sold, together with the unpaid purchase notes, to J. C. Utterback, L. M. Rieke and D. H. Hughes. Thereafter, Utterback, Rieke and Hughes sold certain lots to the Paducah & Illinois Railroad Company, and also a right of way over said sub-division, which right of way was subsequently condemned by the railroad company. After acquiring its right of way, the railroad company constructed its road across Harrison, Madison, Monroe, Jefferson and Broadway streets on an embankment about twenty feet high and seventy feet wide at its base. However, the railroad company constructed another passage at Broadway and Jefferson between Madison and Harrison streets. In the title bond of plaintiffs as well as in the title bonds executed to other purchasers, it was provided that the streets and alleys were to be for the free and unrestricted use of the lot owners.

It is the contention of defendant that the plaintiffs actively assisted and aided the railroad company in violating the covenants and restrictions under which he and the others purchased their lots. The plaintiffs take the position that as the right of way was condemned by the railroad company, a step which they could not prevent, they cannot be held responsible for the railroad's action in interfering with plaintiffs' easement over the streets and alleys in question.

Without giving the evidence in detail, we may briefly summarize it as follows: W. J. Hills, superintendent, N. C. & St. L. R. R. Co., was acting in behalf of the Paducah & Ill. Railroad Company in the acquisition of its right of way into Paducah. He was assisted in securing the right of way for the railroad by Mr. Utterback. During all that time, plaintiff, D. H. Hughes, was acting as counsel for the railroad company, and the title bond to the tracts of land constituting the company's right of way was taken to plaintiff, Rieke. When plaintiffs purchased the remainder of the sub-division they knew of the covenants and restrictions under which the lots theretofore sold had been purchased. It is also clear that they made the purchase with the view of conveying to the railroad company a right of way over the sub-division. After they made the contract agreeing to

convey the right of way to the railroad company and fixing the price therefor, the company deemed it expedient to condemn the right of way on the advice of Mr. Hughes. It will thus be seen that this is not a case where the railroad company condemned the right of way without the consent of plaintiffs. As a matter of fact, each of the plaintiffs was in the employ of the railroad company and actively aided and assisted it in securing its right of way through the sub-division in question. Indeed, it would appear from the evidence of Messrs. Hill, Utterback and Rieke, that one of their chief objects in making the purchase was to obtain for the railroad company the right of way in question. Under these circumstances, it is apparent that the subsequent condemnation proceedings served no other purpose than to acquire under the form of law a right which the company had already acquired by purchase. Since the plaintiffs merely stepped into the shoes of the West End Improvement Company, which had executed the title bond to defendant, and were bound by the covenants and restrictions under which the various lots were sold, and since they not only consented to the acquisition of the right of way by the railroad company, for the purpose of constructing its railroad through the sub-division, but actively aided, assisted and represented the railroad in acquiring such right of way, it is manifest that they, themselves, so far contributed to the violation of the covenant under which defendant purchased as to make them responsible for its breach, thus depriving them of the right to enforce the contract, and giving to the defendant adequate cause for its rescission.

Wherefore the judgment is reversed, with directions to enter judgment in conformity with this opinion.