### Harlan County v. Howard et al.

(Decided Oct. 14, 1932.)

(As Modified on Denial of Rehearing Feb. 3, 1933.)

792

J. B. CARTER for appellant.

J. B. SNYDER and ZEB A. STEWART for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER— Reversing.

In the case of Howard v. Howard, 236 Ky. 557, 33 S. W. (2d) 635, the facts of this case are stated and the law arising thereon is discussed and applied. That action was one brought in the Harlan circuit court to enjoin the fiscal court of that county from taking jurisdiction and disposing of a procedure pending before it that had been instituted by the county attorney, wherein he sought to have that court set aside an order made by it at a previous special term, whereby the county agreed to and did undertake to purchase from Dr. E. M. Howard, who was a brother of the county judge of Harlan county at the time the purchasing order was made, a small parcel of land containing slightly more than one acre, for the ostensible purpose of a pauper graveyard for the county, and for which the latter, through its fiscal court, agreed to pay the vendor the sum of $5,481. The proceeding in the fiscal court, which the case supra attempted to enjoin, was grounded upon the facts therein set forth showing, if true, that the purchasing order was void, and they chiefly consisted of: (1) That the orders of the fiscal court had not been prepared and executed according to the provisions of sections 1842 and 1843 of our present Stattues; (2) that the alleged invalid purchasing order was made at a special term of the fiscal court, and when some of its members were not present nor had they been notified of that meeting; and (3) that the entire proceeding of the fiscal court, by which it attempted to make the purchase, was collusive and fraudulent, in that (a) the price agreed to be paid was grossly exorbitant, (b) the land was so rocky that

it was not adaptable for the purpose for which the purchase was made, and (c) that the then county judge, W. J. R. Howard, who was to go out of office within a few days (as was true of a number of the members of the fiscal court who were his friends and subservient to him and under his influence), and that he fraudulently engineered the consummation of the scheme for the benefit of his brother.

In the case supra, we determined and held that the court in that case erroneously overruled the demurrer to the petition of the plaintiff, Dr. Howard, the vendor of the lot therein, and we also held that the facts therein stated, plus those appearing in the exhibit filed therewith, showed no grounds for the injunction prayed for in the petition. Upon the filing of the mandate in that case the plaintiff therein abandoned it, and appeared in the fiscal court of the county and, by asking for counter relief and otherwise, resisted setting aside of the purchasing order, but in which he was unsuccessful. He appealed to the Harlan circuit court, wherein he was successful, and from that judgment the county prosecuted this appeal.

The facts shown, briefly stated are these: A special term of the Harlan fiscal court was held on Tuesday December 31, 1929; the county judge, W. J. R. Howard, and five of the seven justices of the peace being present. The county clerk was busy that day, and at his request the jailer took the minutes of the meeting. Among these minutes was this:

"Motion of Joe Cawood and seconded by Squire Gross, to purchase lots for colored graveyard at Rest Haven. 1827 lots at $3.00 (carried by whole court voting) for County graveyard only."

The minutes were read to the court before the court adjourned, but they were not signed by any one, and they contained no adjourning order. The next day the clerk wrote upon the order book this order:

"On motion of Joe Cawood, seconded by Esq. J. C. Gross, it is ordered that the County purchase from E. M. Howard, at $3.00 each, making a total of $5,481.00, 1827 lots at Rest Haven Cemetery for county colored and white pauper graveyard and it is ordered that a county warrant for said amount be issued to said E. M. Howard upon presentation

of general warranty deed for said lots, payable out of county levy 1930. Said deed to be accepted by county judge and warrant to be issued by county clerk when said deed is accepted by the county judge."

At the bottom of the orders are these words: "It is ordered that court adjourn until court in course." The county judge on that day signed the order book; none of the justices of the peace being present. Some of them not being satisfied with the purchase of the lots in question had gone down with Dr. E. M. Howard to look at the lots, and, according to the weight of the evidence, they adjourned over to meet again on Thursday the 2nd of January. The county judge on January 1 accepted the deed from Dr. Howard, who was his brother, and had the county clerk issue to him a county warrant for $5,481. The next day all the justices of the peace were present. It was the custom of the court that the justices of the peace would sign their names under the signature of the county judge on the order book to show their approval of the orders. The county judge called the attention of the justices of the peace to the book. Two of them signed the order book under the name of the county judge. The other five refused to sign it, and thereupon entered upon the order book an order setting aside the order of December 31. This the county judge declined to sign, and it was signed by the five justices of the peace. The county judge denied the regularity of the proceedings on January 2, and the county attorney, in the name of the county, brought a proceeding in the fiscal court to set aside the order of December 31. Dr. Howard transferred his county warrant to the Citizens' National Bank; and he and the bank brought an action against the county to recover on the warrant. The two cases were heard together. The correctness of the judgment below turns on the validity of the orders of the fiscal court above referred to. Sections 1842 and 1843, Kentucky Statutes, are as follows:

"Before every adjournment the minutes of the proceedings of said court shall be publicly read by the clerk of the court, and corrected, if necessary; and the same shall be signed by the county judge or presiding judge, with the approval of the justices of the peace present when the court was held.

"No minute or order of the fiscal court shall be valid until the same be read and signed as aforesaid, nor unless the record shows by whom the court was held."

The county judge testified as follows:

"Q. Now, what had been the practice and custom of the fiscal court at this time and for some time previous as to when the orders of the court were written in the order book to be signed? A. It was a general rule that the orders would be written on the day the court met, but usually it was the next day then the clerk would prepare the orders to be signed by the court.

"Q. Then when would the orders be signed that were written into the book, what was the custom? A. Very often they were not signed from one meeting until the next. * * *

"Q. When did you sign the orders of the meeting on December 31, 1929? A. It was as soon as they were written up and my recollection is that it was the next day.

"Q. Don't you remember that you signed the orders on the day of the second meeting when Joe Cawood and Russ Ledford were at the clerk's office and signed them? A. I had already signed the orders and there was some little dissention and they got to talking about another meeting and some of them refused to sign these orders. I had already signed the orders and as they would come in I would call them to go in and sign the orders.

"Q. There had been a meeting on January 2, to make orders about some other matter? A. Yes, there had been a meeting.

"Q. They made some orders then, didn't they? A. Yes."

The county clerk testifies to the same effect, but is positive that the orders were written and signed the next day. It is clear therefore from the testimony that the order of December 31 was not signed by the county judge with the approval of the justices of the peace present, and under the express provision of the statute this order was not valid, and conferred no rights upon Dr. Howard or the bank.

Ground 2, supra, for the setting aside of the purchasing order, was also established by the evidence contained in the record and which, as pointed out in the Howard Case, supra, renders that order, and all action taken pursuant thereto, invalid and void. The ex-county judge (W. J. R. Howard) testified at the trial in the circuit court that it was his custom in convening a special term of his fiscal court to notify all of its members of the time and place, either by telephone or by mail, and that it was his impression that he notified the two members who were absent when the purchasing order was made at such special term, by a letter mailed and addressed to their respective postoffices, and which, if done, would create a prima facie presumption that those two members received the notice, provided it had been mailed in time for them to do so before the special term was to convene. But that presumption is a rebuttable one and those members testified at the trial that they received no such notice. This ground, therefore, was sufficient in and of itself to render the purchasing order and all steps taken thereunder absolutely void, regardless of what might be said with reference to either of the other two grounds supra.

But we are also convinced from a consideration of all the facts and circumstances developed by the evidence, that ground 3, supra, was established. The fiscal court, as we have stated, was about to be superseded by a new incoming one. There was no pressing reason for the immediate acquisition of a pauper graveyard. It was known that the incoming county judge and his associate members of the fiscal court were averse to making the purchase, and, unless it was done by a friendly fiscal court before its members retired from office, Dr. Howard would lose the benefit to be derived from the purchase. The preponderance of the evidence also shows that the price agreed to be paid was grossly excessive. As we have stated, it was slightly in excess of one acre. It was on the outskirts of the town, and it does not appear that it was in its corporate limits, and we are not convinced that such a small tract was worth the price agreed to be paid. Moreover, there is much credible testimony in the cases that the land was underlayed with rock, which at points projected above the surface, and that in many places thereon it would be impossible to make a grave without the use of dynamite. The facts as so briefly outlined

are potent in establishing the charge of fraud and collusion contained in ground 3, supra—so much so as to inspire the belief that it was and is well founded. The county warrant was not a negotiable instrument and the bank has no greater rights than Dr. Howard, who assigned it to the bank. Perry County v. Eversole, 98 S. W. 1019, 30 Ky. Law Rep. 453. The opinion in the Howard Case, supra, is the law of the case on the same facts. The proof clearly sustains the pleading then before the court. The circuit court should have entered judgment in favor of appellants with costs, adjudging the order of December 31, 1929, invalid, and since all subsequent action taken thereunder necessarily shares the same fate, the court should have canceled and held for naught the deed executed by Dr. Howard to the county, unless the latter by its proper officers voluntarily reconveyed the lot to Dr. Howard, in which event no order with reference to the cancellation of the deed would be necessary.

Judgment reversed, and cause remanded for a judgment as above indicated.