## Breathitt County et al. v. Cockrell, Jailer.

(Decided Oct. 17, 1933.)

**744**

O. H. POLLARD, H. L. SPENCER, BRUCE & BULLITT and D. L. STREET for appellants.

C. C. TURNER and WILLIAMS & ALLEN for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming in part and reversing in part.

This case portrays the evil of the law's mistake in authorizing and permitting a governmental unit to issue warrants as evidence of its floating obligations. It depicts the sequence of the General Assembly's omission to provide by an enactment a method of reporting and accounting for, at stipulated periods, the fees and salaries collected by officials whose salaries are not fixed by law, as contemplated by section 246 of the State Constitution.

At the November election, 1929, S. J. Cockrell and Lee Combs were elected, and on the first Monday in January, 1930, qualified, respectively, as jailer and sheriff of Breathitt county. At the April term, 1930,

of the fiscal court, John S. Hollon was appointed and qualified as treasurer of the county.

For the keeping and dieting of county prisoners. during the year 1930, Cockrell, as jailer, was allowed by the fiscal court $4,586.30, evidenced by two warrants. payable out of the general fund; for the year 1931, it allowed him $5,821.67, evidenced by two warrants to be paid out of the same fund.

For superintending the courthouse, the jail, and other public buildings of the county, and for keeping them clean, comfortable, and in repair, the fiscal court allowed him $1,860 for each of the two years, payable in installments of $155 a month. At or near the date of each of the warrants he presented them to Hollon, treasurer, and demanded their payment, which he refused, except $2,635, representing seventeen months' allowance for keeping and caring for the public buildings. During the years 1930 and 1931, the heating apparatus furnished by the county to heat the jail and the courthouse was out of repair, and insufficient to furnish heat either to the jail or the courthouse. To repair it he expended of his own funds $785.57, for which the fiscal court allowed him $456.96 in 1930, and $328.61, April 11, 1931, and a warrant therefor was issued payable out of the general fund. This warrant was presented to the county treasurer, and its payment refused by him.

In the year 1930, the revenue levied and collected by the county for the general fund was $34,014.30; for the year 1931, $30,168.08; and for the year 1932, approximately $34,000. The current expenses incurred. for the payment of such items as the law denominates governmental expenses for each of these years were approximately $18,000. The warrants issued and delivered to Cockrell for the purposes indicated were repeatedly presented to the treasurer for payment, and, as often as presented, payment was refused.

Lewis Combs, a brother of Lee Combs, and S. L. Combs, the father of Lee Combs, were deputies of the sheriff, Lee Combs. They indulged in the practice, during each of these years, of buying the warrants issued to claimants in satisfaction of the obligations of the county, at a discount of 22 1/2 to 33 1/3 per cent. In the annual settlements of Lee Combs as sheriff, the ag-

gregate of the warrants purchased by them was deducted by him from the total of the county taxes with which he was chargeable, and the balance paid by him to the treasurer. In this way the treasury was constantly depleted.

Cockrell filed this action setting out these facts and sought an injunction preventing the treasurer from first paying warrants not issued for governmental expenses, and also requiring him to pay his warrants. He sought to enjoin the sheriff and his deputies from dealing and trafficking in county warrants, and to compel the sheriff to pay to the treasurer the taxes collected and levied for the general fund by the fiscal court into the general fund. Hollon and Lee Combs defended, both making the same defenses.

Following a traverse, their answers respectively charged that during the years 1930 and 1931, Cockrell had kept and dieted a certain number of federal, state, city, and county prisoners, and had received therefor a definite amount, which, when added to the annual salary of $1,860 he had thereby received annually a salary in excess of the constitutional limit of $5,000, and that by reason thereof he should not collect, and the county should not be compelled to pay, the warrants described in the petition.

Breathitt county presented an intervening petition setting forth the same facts and figures contained in the answers of Hollon and Combs, and asked that it be permitted to become a party to the action; that its petition be taken as its answer, and that Hollon be enjoined from paying the warrants to Cockrell, and for an accounting by Cockrell, showing the amounts received as jailer of Breathitt county from all sources, as well as all necessary and legal expenses incurred by him; that the court determine the excess, if any, of $5,000 received by him from all sources during each of the years, and that the excess, if any, be deducted from the warrants, and if the amount received by him equaled the face of the warrants that they be canceled.

The county's intervening petition was permitted to be filed. The court later was of the opinion that it had no more right to defend on the grounds set out therein than its treasurer and sheriff, and denied it the right to intervene, and also its right to have its subsequently instituted action for the same purpose consolidated with

this one. On final hearing the court granted Cockrell the relief sought in his original and amended petition. The issues as presented by the pleadings, and to which the evidence was directed, are here for review.

To dispose of them properly, it is necessary to review certain sections of the statute.

Section 2224, Ky. Statutes, requires the jailer to take the oath of office and execute bond to the commonwealth, on which an action may be brought from time to time by any person injured by the act or the omission of the jailer.

Section 2225 requires him to discharge and perform all the duties and acts prescribed by law.

Section 2226 enjoins upon him the duty of receiving and keeping all persons in jail, who shall be lawfully committed thereto, until they are lawfully discharged. To treat them with humanity, and to furnish them with proper food and lodging during their confinement, and to deliver such as die in jail to their friends, if requested, or have them decently buried at the county's expense.

Section 2227 provides that he shall receive and confine in jail persons committed under the federal laws, or by cities or towns.

Section 2229 makes him the custodian of the jail, and prescribes where he shall reside.

Section 2236 imposes upon him the duty of keeping the jail clean and comfortably warm, and to provide the prisoners confined therein with a sufficiency of bedclothing to make them comfortable; the county paying for same.

Section 1730 especially provides for the keeping and dieting of prisoners, when confined in jail for other than a felony or contempt of court, $1 per day to be paid out of the county levy to the jailer.

Section 3948 provides that in counties of less population than 75,000, the jailer "Shall be superintendent of public square, court house, clerk's offices, jail, stray pen and other public buildings at the seat of justice, and the fiscal court of each of said counties shall annually appropriate, of the county funds, a sum sufficient to purchase the labor and materials necessary to keep the public property aforesaid, including the jailer's

residence, if owned by the county, in repair and in clean, comfortable and presentable condition, and heat and light the same; said sum so appropriated to be expended by the jailer for the purposes aforesaid.''

Section 930 provides that the county treasurer shall execute a bond, to be approved by the fiscal court, on which suit may be brought.

Section 931 makes it his duty to receive and receipt for all moneys due or to become due the county from the several collecting officers thereof, or any person or persons whose duty it is to pay money into the county treasury, which shall be held by him subject to the orders of the fiscal court. To keep his office open for the collection of moneys which he shall be entitled to receive at all reasonable hours except on Sunday and legal holidays, and when paying out any money he shall take a receipt therefor. It requires him to keep books in which he shall keep a correct and accurate account of all moneys received and disbursed for the county, showing when, from whom, and on what account received, and when, to whom, and what account paid, and so to arrange and keep his books that the money received and paid out shall be exhibited in separate and distinct amounts, and prohibits him from disbursing money for any other purpose than that for which it is collected and paid over to him. It also requires him to balance his books on the first day of each month so as to show the amount on hand belonging to each fund on the day the balance is made, and report to the county judge in writing each payment of money paid to him as treasurer, showing when and from whom received, and on what account, and on failure to do so within five days ''after payment is made, he shall be guilty of a misdemeanor, and on conviction, shall be fined not exceeding one hundred dollars.'' An additional duty is to make a settlement as required by the fiscal court, and at each regular April term after his appointment, which settlement shall cover the previous year. Section 932 reads:

> ''It shall be the duty of the sheriff or other collecting officer of the county to pay to the county treasurer, on the first day of May, and every sixty days thereafter, all money in his hands collected by him for the county, taking a receipt therefor from the county treasurer for the amount so paid,

in duplicate, one copy to be retained by the sheriff and the other to be delivered by him to the county judge, who shall file the same in his office."

The same section requires the final settlement of the sheriff, and the payment of all moneys in his hands to the county treasurer, and the taking a receipt therefor.

Section 935 provides that "the books of the county treasurer shall, at all times, be open to the inspection of the fiscal court, or of any member thereof."

Section 936 requires the county judge to report to the fiscal court "all statements" required to be made by the county treasurer.

Section 3747 provides that if any officer of the commonwealth, county, city, town, or district, who shall receive directly or indirectly any interest, profits, or perquisites from the use of public funds in his hands, or money to be raised through its agencies, shall be guilty of a felony, and on conviction confined in the penitentiary for not less than one nor more than five years, and forever thereafter disqualified from holding office, and the judgment of conviction shall recite such disqualification.

Section 4144 expressly prohibits the sheriff or collector speculating in claims against the state or county. The penalty for violating this section is from $500 to $2,000 fine.

Section 4142 imposes upon the sheriff himself, or one of his deputies, the duty of visiting every ninety days before the first of March and November, each justice's district of the county for the purpose of collecting and receiving taxes. These several sections define accurately the duties of the county treasurer and sheriff, as they concern the topic presented for consideration.

It will be observed that no provision of either of them, and indeed no provision of any other section, authorizes or permits the treasurer and the sheriff, or either of them, to institute or defend an action to protect the county against a debt claimed by the holder to be owing by it, or to recover money due it.

It is, however, an accepted rule that a taxpayer, after requesting the fiscal court to decline to pay a claim asserted by a claimant against the county, and to institute an action to prevent its payment, or to recover money due it, or to defend an action against it,

and it declines to do so, may sue or defend for the county, alleging in his pleading his request of the fiscal court and its refusal to comply therewith. Com. v. Tilton, 48 S. W. 148, 20 Ky. Law Rep. 1056; Williams v. Stallard, 185 Ky. 10, 213 S. W. 197; Shipp v. Rodes, 196 Ky. 523, 245 S. W. 157.

The answers of Hollon and Combs do not state any facts showing the invalidity of the warrants of Cockrell justifying the treasurer's refusal to pay them, nor contain an allegation bringing their right to defend his action within the rule stated in the cases, supra, and there being no statute conferring on them the authority to do so, it is plain that the affirmative allegations of their answers do not state facts sufficient to constitute either a defense, counterclaim, or set-off, though Cockrell owed the county, and it did not owe the amount shown by the warrants.

The treasurer is a mere disbursing officer without power to question the act of the fiscal court when ordering a warrant drawn on him, except when it shows on its face that it is illegal, or it or the record, required by statute to be kept by him, shows that its payment will exceed the fund levied for that year for the purpose for which it was drawn, or it is in the same manner shown that its payment will exceed the constitutional limit of the county's debts for that year, and that it was not drawn for governmental purposes.

In either event (unless it is for a governmental purpose), not only should he decline to pay it, but if he pays it, in such circumstances, he does so at his own risk. Leachman v. Board of Supervisors, 124 Va. 616, 98 S. E. 656; State ex rel. Guion v. Chauvin, 147 La. 703, 85 So. 645.

Governmental expenses, which include the salaries of officials, are not catalogued by the constitution with a permissible expense, i. e., a debt, the fiscal court may, in its discretion, contract within the constitutional limit.

The officials named in the Constitution, one of which is the jailer of the county, are entitled to priority of payment of their fees and salaries. Therefore a disbursing officer of a governmental unit, in whose hands the fund is intrusted by statute for defraying its expenses, is without legal right to refuse to recognize this right of the officers, or by any method of manipulation

of the funds under his control, to postpone, delay, or prevent their payment, and thereby coerce them to accept and hold nonnegotiable warrants (Harlan County v. Howard et al., 246 Ky. 791, 56 S. W. (2d) 365) or sell them at an emasculatory, or any, rate of discount which is equivalent to an arbitrary reduction of their salaries by the disbursing officer.

The basic ideology of this principle is, every government must essentially carry on the established governmental functions, and, to accomplish this, the fees and salaries of its officers are, of a necessity, preferred claims, and entitled to payment over its permissible expenses. Nelson Fiscal Court v. McCrocklin, 175 Ky. 199, 194 S. W. 323; Livingston County v. Crossland, 229 Ky. 733, 17 S. W. (2d) 1018.

For like reason, the expenses incurred therefor are not within the limitation of section 157 of our Constitution. Russell County Fiscal Court v. Russell County, 246 Ky. 529, 55 S. W. (2d) 337. It is therefore the duty of a fiscal court, when making the annual levy of 50 cents on each $100 of property taxable for county purposes, to levy a sufficient per cent. thereof to defray governmental expenses (section 180, Constitution), or by a later appropriate order, to make their priority of payment assured, direct the treasurer to pay them out of the general fund before the payment of warrants issued for permissible debts. On its failure to discharge its duty in this respect, the treasurer should, on the books required to be kept by him (section 931), enter the date of the presentation, the amount of the warrant, and to whom payable, and pay it in the order in which it is presented, out of the fund in his hands at the time of its presentation or out of the fund first coming thereafter into his hands, at the same time recognizing and respecting the right of the officers to priority of payment.

A warrant issued for the keeping and dieting of prisoners, keeping the jail comfortably warm, clean and free from nauseous odors, or caring for the public square, jail, stray pen, and other public buildings at the seat of justice, or for furnishing and providing heat at the jail and courthouse, or for the salary of a county official, designated in the Constitution, is within the category of governmental expenses, and it is not only

the mandatory duty of the fiscal court to provide for their payment, but it is a like duty of the treasurer to pay the same as above indicated.

The purpose of the Constitution creating the office, and of the statute providing the fees and salary of jailer, was to secure, promote, and maintain the peace, good order, and the general welfare of the county. It is apparent that without the incumbent's right to priority of payment of his fees and salary over permissible debts, not only will he be hampered in the discharge of his duties, but the very purpose for which the office was created will be endangered, unless perchance he is possessed of independent means, qualifying him financially to hold the office without the aid of his fees and salary.

It is shown by the evidence that during two years Cockrell was deprived of his fees and salary, evidenced by the warrants, he met and paid the expenses of feeding and dieting prisoners and other general expenses incident to the discharge of his duties with other funds which he possessed. The facts herein evidence the necessity for, and the wisdom of, the law requiring officer's fees and salaries paid before the payment of a county's permissible debts.

It is shown by the evidence that Breathitt county warrants have become of such little value that only two individuals residing in the county will purchase them at any price. Its outstanding warrants amounted to $90,-000 in 1929, since that time there have been issued others amounting to $50,000, not including Cockrell's, which are unpaid and practically of no salable value.

In one of the years covered by Cockrell's warrant, Combs as sheriff reported $24,000 of warrants in his settlement, took credit therefor with the approval of the fiscal court, and the balance of $30,000, total taxes collected for that year, was reported as paid to the treasurer.

It is not doubtful that the treasurer's disregard of his statutory duties largely contributed to the nonpayment of Cockrell's warrants, and his wrongful refusal to recognize his right of priority of payment deprived him of the timely use of his fees and salary to his damage.

It is superfluous to add that he was entitled to re-

lief, and to an adequate remedy to prevent the treasurer continuing to disregard his rights, and thereby deprive him in the future of other payment.

The circuit court correctly held he was entitled to priority of payment over permissible expenses out of the general fund on hand, or that might thereafter come into the treasurer's hands, until his warrants were paid in full.

The sheriff and his deputies are not disbursing officers. It is their duty to collect from the taxpayers and pay the treasurer the taxes in cash, within the time and as required by section 932. Breckinridge County v. Gannaway, 243 Ky. 49, 47 S. W. (2d) 934. They are the "collector" of taxes as this term is used in section 4144, and they are prohibited by the statutes, supra, from dealing and trafficking in county warrants. The buying of warrants in the course of collecting the taxes by either of them comes within the penalties, civil and criminal, of the statutes, supra. The taxes collected by them are a trust fund, and without these sections of the statute the general principles of equity forbid a bailee, trustee, or other fiduciary dealing in the fund of the trust, and speculating with it. If he does so, he is liable not only for the original principal, but the profits arising therefrom. The sheriff according to the principles of equity, controlling the duties and liabilities of fiduciaries, is liable to the county or its creditors for the discount or the profit arising out of the purchase of any warrant by himself or deputy, and which was retained out of the taxes collected for the county.

The disregard of these tax collectors of their statutory duties, as well as their speculating in warrants, prevented the payment of Cockrell. As to the sheriff, Cockrell was entitled to compel him to discharge his duties prescribed by section 932, and to prevent him and his deputies in the future violating it and sections 4142 and 4144.

Ordinarily a mandamus proceeding to compel the payment by the treasurer of a county warrant, and the sheriff to discharge a statutory duty, is an adequate and the proper remedy. Section 477, Civil Code of Practice; County Board of Education of Pulaski County v. Jasper, 193 Ky. 222, 235 S. W. 366; Citizens' National Bank of Somerset v. Pulaski County, 216 Ky. 332, 287 S. W. 892.

Cockrell was entitled to adequate relief, i. e., relief of that character that would afford him a complete remedy. He was entitled to invoke the power of the court by the process of a mandatory injunction which was essential and required in the circumstances, to afford him a complete remedy.

The exigencies of the situation as shown by the evidence demonstrates that a mandamus against the treasurer and sheriff would not afford complete relief. The granting or refusing of an injunction in the nature of final relief, in every case, depends upon the facts and rests in the sound discretion of the court. Somerset Water, Light & Traction Co. v. Hyde, 129 Ky. 402, 111 S. W. 1005, 33 Ky. Law Rep. 866.

In Louisville & N. R. R. Co. v. Central Stock Yards Co., 133 Ky. 155, 97 S. W. 778, 781, 30 Ky. Law Rep. 18, it was stated:

"A court of equity will not interfere by injunction where there is an adequate legal remedy, but where there is no adequate legal remedy, and the ends of justice require it, it will do so to prevent irreparable injury."

A mere statement of the proven facts is sufficient to show that a mandamus, which is purely a legal remedy, was entirely inadequate in this case, and that the rule, supra, was correctly applied by the trial court. W. D. Harris & Co. v. Lewis, 235 Ky. 810, 32 S. W. (2d) 401.

In its order the treasurer was directed to pay Cockrell's warrants in full before paying any other claims whatsoever. In its intervening petition the county alleged facts and figures, which on their face show that Cockrell had been paid a salary of $5,000 a year for 1930 and 1931, not including the amount of his warrants. While he was entitled to the relief granted as against the treasurer and the sheriff, and it was proper to require the treasurer to retain a sum sufficient to pay his warrants, but if he had received his salary of $5,000 per year for the years covered by the warrants, the county was entitled to require of him an accounting and a settlement, and if in fact he had received a salary of $5,000, exclusive of the warrants, to their cancellation.

On the presentation of the claims on which Cockrell's warrants were based, with the request of an order

allowing them, if the fiscal court in good faith believed that he had received from the fees and perquisites of his office theretofore collected from every source, an amount equal to or exceeding the constitutional limit (section 246, Constitution) of the annual salary of $5,-000, it was, as stated in Boyd County v. Boyd Fiscal Court, 247 Ky. 183, 56 S. W. (2d) 959, 961, "clearly within its jurisdiction as a condition precedent to the allowance and payment of the account presented, to enter appropriate orders requiring of him . a full and complete showing of such fees and perquisites received from all sources, and also requiring him to report the expenses of his office, before allowing the account presented." Holland v. Fayette County, 240 Ky. 37, 41 S. W. (2d) 651. The issuance of the warrants was not conclusive of the county's right to an accounting and settlement by him, since he held as trustee the amount received by him annually in excess of $5,000, the constitutional limit of his salary, and nothing short of a payment of whatever amount he may owe the county will preclude its right to sue for an accounting and settlement.

The intervening petition contains allegations sufficient to show that the warrants in the hands of Cockrell theretofore issued to him by the fiscal court ought not to be paid, and the whole of the amount represented by them was not due him, for the reasons set forth in it.

It is argued by Cockrell that there is no allegation concerning his insolvency, and that the rights of the county are controlled by the ordinary rules governing the relations of the debtor and creditor when determining its right to require a settlement herein, and in ascertaining whether the warrants had been paid by his collections from the sources therein set out, and not by the rules stated in Commonwealth v. Coleman, County Attorney, 245 Ky. 673, 54 S. W. (2d) 42 and cases cited. Accepting the allegations of the intervening petition that he had received, after deducting the permissible expenses incident to the discharge of his duties as jailer, and still had in his hands, an amount in excess of the $5,000 salary limit, it cannot be doubted that such sum was held by him as trustee, or in trust for the county, and his right to collect the warrants are controlled by the general principles of equity controlling

756

the liability of a trustee for a trust fund. If, as alleged in the intervening petition, on a settlement by Cockrell as jailer, he is found to owe the county a sum represented by the face of the warrants, the same should be cancelled, or, if in part only, the same should be credited by his ascertained indebtedness to the county. The order of court in so far as it directed that he be paid the face of the warrants before making a settlement with the county was improper, and to this extent it is modified. But the treasurer should be required to keep on hand a fund sufficient to pay them until a settlement is made by him in this action.

The judgment requiring the treasurer to pay the amount of the warrants to Cockrell before a settlement with the county will be modified as herein indicated. Otherwise, it is affirmed as to Hollon and Combs. The judgment denying the county a hearing on its intervening petition is reversed, and also reversed as to Hollon to the extent above indicated, for proceedings consistent with this opinion.

Whole court sitting.