## Talbott, Com'r of Finance et al., v. Burke, County Tax Com'r of Jefferson County.

June 10, 1941.

188

Hubert Meredith, Attorney General, and Jesse K. Lewis, Assistant Attorney General, for appellants.

Lawrence Grauman, County, Attorney, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The case involves the primary question of the right of a public officer to compel the State Treasurer to pay

him a portion of the salaries, fees and expenses of his office after the appropriation made for such purpose by the Legislature has been exhausted.

Re-enacting a previous statute, except only to raise the amount theretofore allowed, the 1940 General Assembly (Chapter 167, Session Acts; Section 4072 of the Statutes Supplement 1940) provided that the Tax Commissioner in counties containing cities of the first class shall be allowed $6,000 a month to pay necessary official expenses including the salaries of himself, deputies and assistants. This is an advancement to be deducted from the total amount found to be due the Tax Commissioner when yearly settlements are made. The sums are payable by the Treasurer upon warrants of the Department of Finance on the first of each calendar month. See Shannon v. Burke, 276 Ky. 773, 125 S. W. (2d) 238. The State Treasurer has believed it to be his duty to decline to pay a warrant for this claim as of June 1, 1941, upon the ground that the appropriation made by the Budget Act of 1940 (Chapter 16) of $307,000 for the current fiscal year "for ordinary recurring expenses of operation" of the several offices of County Tax Commissioners of the state has been exhausted.

The Tax Commissioner of Jefferson County set up his statutory duties, the total of the assessments, and the sums to which he is entitled under the law. He recited that pursuant to the terms of Section 4072 of the Statutes (Supplement, 1940) the Department of Finance had issued him a warrant for $6,000 to cover the salaries and expenses, but payment had been refused for the reasons stated. He asked and was granted a declaration of rights and a mandamus compelling the State Treasurer to pay the warrant. The Treasurer and Commissioner of Finance appeal.

The Budget Act (Chapter 16) carried an emergency clause and became effective when approved by the Governor February 3, 1940. The Bill, which became Chapter 167 of the Acts, and Section 4072 of the Statutes Supplement 1940, was introduced February 27th, passed the second body of the legislature March 14th, and went into effect June 12, 1940. Since it provides for the repeal of all conflicting laws, it may well be said that if there be any conflict the Budget Act in this particular was repealed. Cf. Shannon v. Burke, supra; Shannon v. Dean, 279 Ky. 279, 130 S. W. (2d) 812. Although Chap-

ter 167 is susceptible of the construction that it constitutes an appropriation of $6,000 a month, its real purpose is only to define the method and time of payment of the expenses of the office of Tax Commissioner of counties containing cities of the first class different from that laid down for other such officers. The entire annual payment of $72,000, as we have stated, is to be credited on the total amount which may be found due that office when the yearly assessment shall be made. It does not undertake to change the compensation or expenses theretofore allowed. So we get to the primary question stated at the beginning of this opinion.

Obviously the assessment of property for taxation is fundamental. The Constitution, Section 99, provides for the election of an assessor in each county of the state, though the legislature is permitted by Section 104 to abolish the office and provide for the assessment by other officers. That body exercised this power by enacting Section 4042a-1 of the Statutes and transferred the duties of the County Assessors to the State Tax Commission and to County Tax Commissioners, and provided for the election of the latter. They are important State officers, serving both the commonwealth and their respective counties. Section 4042a-8 of the Statutes fixes the compensation of the several commissioners, which is based upon the total assessments. Certainly, it was intended that that compensation should be paid. As long as the law remains in the statutes and the services are rendered, it is the duty of the legislature to provide sufficient funds with which to pay the expenses of operation. It cannot be said that mere failure on its part to provide enough in the budget appropriations to cover the payment of all of them impliedly effected a repeal of a part of that statute. Such an idea would not work, for those who presented claims before the appropriation was exhausted would be paid and the others go empty handed.

The general Budget Law controlling the manner of accounting and disbursing the money of the state (Section 1992b-6, Statutes) provides:

"All expenditures of the Commonwealth and of all of the budget units thereof shall be made by virtue of the authority of an annual or biennial appropriation act or appropriation acts, which shall be based upon a budget prepared as set forth in this act."

The legislature realized that there might be an under-estimate of the need in certain instances and a resulting deficit, such as has occurred here. It so expressed itself in Paragraph 31 of the Budget Act (Chapter 16, Acts of 1940), and to take care of that contingency it made an appropriation, in Section 4 of Part One, under the title "General Emergency Fund," of $200,000 annually "For meeting ordinary recurring and extraordinary expenses deemed emergencies by the Governor of the Commonwealth and to be expended by the Governor to meet any emergency that may arise, which requires the expenditure of any part of said fund." Paragraph 31 of the Act states as one of the two purposes of that appropriation to be to take care of any deficit. This record, however, does not show that the Governor was called upon to allot enough of the general emergency fund to this particular item to cover this deficit. An apparent impasse has, therefore, arisen. Here is an important and necessary governmental function requiring money with which to carry it on, and the intention of the legislature to supply that money, but in fact a bare shelf in the cupboard resulting from an erroneous estimate of the amount which would be needed.

As held in Livingston County v. Crossland, 229 Ky. 733, 17 S. W. (2d) 1018, and Breathitt County v. Cockrell, 250 Ky. 743, 63 S. W. (2d) 920, 92 A. L. R. 626, public officers are entitled to payment of their fees or salaries, and it is the duty of the legislative body upon which rests the responsibility to provide the money therefor and of the disbursing officers to recognize the preference and priority of such claims. More recently, in Fulton County Fiscal Court v. Southern Bell Tel. & Tel. Company, 285 Ky. 17, 146 S. W. (2d) 15, 24, we held that the Constitution when considered in its entirety requires that necessary governmental expenses shall be paid out of a county's revenue even though it results in exceeding the specific limitations of indebtedness, saying:

"We have always held that every taxing unit must assure the payment of expenses of the usual and current administration of the government which it was organized to provide; that such is the imperative implication of the constitution as a whole. The purpose of the limtiations is to protect the people from improvident contracts, voluntarily assumed, and it is not thought they refer to expenses of gov-

ernment, which are compulsory obligations cast upon the local unit. If it were otherwise, the 'fundamental safeguards and bulwarks of organized society' would be destroyed. \* \* \* As more poignantly said, in Pulaski County v. Richardson, 225 Ky. 556, 9 S. W. (2d) 523, 526, 'a county cannot commit suicide,' and must continue its government as an arm of the state. If the money which should have been reserved for the payment of these essential expenses has been spent for other purposes, public policy requires that the obligations representing those which are unpaid shall be paid.''

Here we have a necessary governmental expense incurred under the express authority of the legislature and a failure of the legislature, through an error, to provide sufficient funds therefor. It is observed that there is no question of the accuracy of the allegations of the petition in respect to necessity or amount required. We are, therefore, of the opinion that the circuit court correctly ruled that the plaintiff is entitled to the payment of his claim and properly directed the Treasurer to pay the warrant therefor and others of a similar character which may be issued in the future.

Judgment affirmed.